C. WALLACE, Superintendent Western and Atlantic Railroad, plaintiff in error, *vs.* JOHN T. ALFORD, defendant in error.

1. The State is not liable for contracts made, or acts done, or property seized, by the officers commanding the Federal armies, or by persons appointed by them, during the occupation of her territory, or any part thereof, prior or subsequent to the surrender, till a Provisional Governor had been appointed for her by the President of the United States, and he had entered upon the discharge of the duties of his office.

2 The Western and Atlantic Railroad is not liable to pay for cross-ties taken from a citizen and used in the reconstruction of the road, by a person appointed by General Wilson to superintend and repair the road, prior to the appointment of Provisional Governor Johnson, unless the State assumes such liability by Act of her Legislature, or by some agent duly authorized by the Legislature to assume the liability for her. A ratification of the acts of such officer, acting under authority of the United States, by a subsequent Governor or superintendent, without legislative sanction, would not bind the road or the State.

3. The repair of the Western and Atlantic Railroad and the rebuilding of portions of it, by order of General Wilson, to open communication with the West, to obtain supplies for the large cavalry force, with which for a time, he occupied and controlled the State, is "matter of public knowledge," of which, as well as of the public history of military operations in the State, the Courts will take judicial notice.

4. The title to personal property taken by authority of the United States for public use, vests in the United States, and if such property, after it was seized, was used for the repair of the Western and Atlantic Railroad for military purposes, the person for whom it was taken must look to the United States, and not to the State for compensation, unless the State has subsequently assumed the responsibility.

Army seizures, etc. Western and Atlantic Railroad, etc. Demurrer. Decided by Judge POPE. Fulton Superior Court, May Term, 1869.

The petition of Alford against Wallace, as Superintendent of the Western and Atlantic Railroad, contained the following averments: On the 20th of May, 1865, "when one John W. Glenn was, by appointment of General J. C. Wilson, (commanding the armies of the United States in the State of Georgia, and being then, *de facto*, the Chief Executive authority therein) the Superintendent of the Western and Atlantic Railroad, he, the said Glenn, being, then and there, to-wit: at Atlanta, in the county aforesaid, in the actual and undisputed discharge of the duties of said office, and having full control of all the property and servants of said railroad," being the same servants, for the space of two years, employed by George D. Phillips, former Superintendent, continuing under Glenn their accustomed duties, in obedience to the orders of Glenn, said servants took cross-ties, worth $425, which belonged to Alford, and put them into the bed of said railroad for use and service therein, and that on the 25th of September, 1865, when said railroad was turned over to the civil authorities, the cross-ties were still of said value, and were being so used, and yet said Wallace, on the 15th of February, 1867, refused either to give up said cross-ties or to pay for them.

A second count was trover, for the same ties, in the usual

form, charging Wallace, as Superintendent, with having converted them on said day in 1867.   The first count was amended by averring that Glenn's said appointment was lawful, necessary and proper, that Glenn, while acting as *de facto* Superintendent, with the other servants of said railroad, rebuilt said road from Atlanta to Marietta (it having been destroyed by the contending armies,) repaired the wells and cisterns, built temporary shops at Atlanta, "in the name and service and for the use of the State," at a cost of, say, $50,000 in procuring material and labor from many persons, including Alford, a portion of which sum, say $35,000 was advanced by the United States, and the claims of such of said persons as were unpaid (including Alford) were referred to the State of Georgia for payment when the road should be returned to said State and had not been adjusted at that time, to-wit: when, in September, 1865, said road was turned over to the civil authorities under James Johnson, Provisional Governor; that then, "the State received said railroad and took the benefit of the repairs done on the same by said Glenn and other servants as aforesaid, including the use and service of said cross-ties, and refunded to the said United States the several sums advanced by them as aforesaid, to pay various items of expenses incurred under said Glenn, going to make up said sum of thirty-five thousand dollars, and the said defendant used and appropriated, to the service of the same, a very large quantity of lumber, belting, paints and oils, hardware and other materials" of the value of, say five thousand dollars, "bought by said Glenn, for the service of said road," paid for the offices rented by said Glenn, and paid a large number of the servants hired by Glenn, and said defendant "with a full knowledge of the facts aforesaid, ratified and confirmed the agency of said Glenn and other servants of the road, which ratification was made by Provisional Governor Johnson, and the Superintendent and servants and employees under him, and the said ratification was reaffirmed, and the acts of said Glenn, as Superintendent of said railroad, recognized and satisfied by each Executive of the State and each Superintendent of said road from that time down to

and including the present Executive of the State and Superintendent of said road, and the several Executives and Superintendents aforesaid recognizing said Glenn as Superintendent of said road by adopting acts and contracts, as such," in the original and amended petition described, by means whereof Wallace, as Superintendent, became liable to pay Alford for said cross-ties.

The defendant's counsel said this petition was insufficient in law, because it did not state what were the acts of the ratification of the various officers of the State mentioned; because Glenn was not Superintendent of the Western and Atlantic Railroad, and had no authority to bind it by his acts, and because the various officers mentioned had no authority to ratify the acts of John W. Glenn, and for other minor reasons in the record, but not pressed here. The demurrer was overruled and this is assigned as error.

P. L. Mynatt, for plaintiff in error, said Glenn was not Superintendent. Irw. Code, sec. 972. Said officers could not ratify his acts so as to sustain this suit, Walker vs. Spullock, 23 Ga. R., 436; Dobbins vs. P. & A. R. R. Co., 37 Ga. R., 260.

Hillyer & Bro., L. J. Gartrell, for defendant, cited Vattel's L. of N., 389; Reconstruction Acts, as to the officers of W. & A. R. R., and their powers, Irw's Code, secs. 972–977 inclusive, 982 to 985 inclusive, 986 to 990 inclusive, 991 to 996 inclusive; as to *de facto* officers, Irw's Code, sec. 120, 3711, 9th Mass. R., 231; 9th Wend., 17; 5th Wend., 231; 3 John., 431; 15th Mass., 170-180; Andrews' R., 263; 23 Cal. R., 314; *assumpsit* is implied from use of the cross-ties and refusal to pay for them, 15th Ind. R., 142; 18th Maine R., 15; 38th N. H., 431; 5th Peck, 488; 4 Mass., 515; 2 Peters, 144, and cases cited; 2d Am. L. Cases, 746, and cases cited; 6th Maine, 391; 10th Maine, 429; 11th Maine, 371; 12th Maine, 162; 11 Barr, 252; 2nd Redf. on Railways, 115; 2 Wallace, 645; 14 Barb., 662; 1 Hill, 176; 2nd Kerwan, 170; 17th Vermont, 533; as to ratification, Irw's Code, secs. 2158, 2168; 1st Kelly, 428; 7th Cranch,

300; 19th John., 59; Story on Agency, 242, 244, 253; 12th N. H. R., 236-7; 21st Wend., 296; 19th Peck, 511; 13th Ga. R., 46; assent of corporations, 1 Peck, 297; 21 Wend., 296; 12 Wheat, 64-70, 74; 19 Peck, 511; 14th John., 119; Grant on Cor., 305; Story on Agency, sec. 53, 250, 251; 7 Simm's Chan., 337; 1 Mylne & Craig, 650.

BROWN, C. J.

The demurrer admits all the allegations in this declaration that are well pleaded. The substance of the allegations is, that General Wilson, while he occupied the State as military commander, with his forces, on the 20th of May, 1865, which was during the period between the surrender and the appointment of Provisional Governor Johnson, by the President, appointed Major Glenn to take charge of the Western and Atlantic Railroad, as Superintendent, and to repair the same, and that the old officers and servants who were on the road under George D. Phillips, former Superintendent, remained in position under Major Glenn; that Glenn sent an engine and cars to DeKalb county, and seized a large lot of cross-ties, the property of the plaintiff, and carried them and laid them down on the road bed, where they still were in possession of the road at the commencement of this action, as good as when taken from the plaintiff, and that the road keeps them and refuses to pay for them. It is also alleged, that the United States government paid some $35,000 of the amount expended or falling due, during the time the road was controlled by Major Glenn, which the State refunded, and that all the subsequent Superintendents of the road, and Governors of the State, have ratified the acts of Major Glenn, etc. But there is no allegation that the Legislation has recognized or ratified the acts of Major Glenn to any extent beyond the payments already made.

Under this state of facts, is the road liable to pay for the cross-ties taken from the plaintiff? We think not. While we admit the liability of the State, the more especially in view of her repeated acts of ratification, to pay all debts contracted by Provisional Governor Johnson, appointed for

her; by the President of the United States, we deny her liability for contracts made, or acts done, or property seized by the officers commanding the Federal armies, or persons appointed by them, during the occupation of her territory or any part thereof, prior, or subsequent to the surrender of the Confederate armies, till a Provisional Governor had been appointed for her, by the President, and he had entered upon the discharge of the duties of his office. The contrary doctrine would make the State liable to pay for all damages done to citizens, by General Sherman's army, while he occupied the State with a hostile force, and for all cotton burnt by his or General Wilson's forces, and for all property taken and used by them, when they did not pretend to act for the State, or as her agents or officers, but as officers of the United States, in hostility to the State.

2. As the State Road is the property of the State, and its incomes are part of her revenue, we hold that the road is not liable for the lot of cross-ties mentioned in this declaration unless the State by her Legislature, or by some agent authorized by the Legislature, has assumed such liability. No ratification of the acts of a military commander or his servants done under such circumstances, which may have been made by the Superintendent of the road, or the Executive of the State, can bind the State, and make this a debt due by her, unless the Executive or Superintendent is authorized by proper legislation to make such ratification. If the Governor or Superintendent may bind the State by such ratification without authority from the Legislature, they may bind her for all losses incurred by the action of the Federal armies in the State, which position will hardly be seriously urged. It is said in the argument that there was a contract between the State and the Federal government, by which, after the appointment of Provisional Governor Johnson, the road was turned over to the State and she agreed to pay the Government certain sums expended on the road, etc. If so, the State is bound by her agreement, if made by competent authority, and if she agreed to pay this claim, or any other, she is liable and bound to meet her obligation in

good faith.   Her liability in such case would grow, not out of the nature of the transaction, but out of the contract.   But no such contract is shown by this record, and therefore no such liability appears in this case.

3.  It is part of the public history of the times that General Wilson, in May, 1865, occupied and controlled the State with a large cavalry force, and that the supplies in the State were so far exhausted by the ravages of war, and the drafts made by the two armies, which had for months confronted each other upon her territory, that it was a military necessity for him to repair the Western and Atlantic Railroad as speedily as possible, and thereby re-open communication with the West, whence he might draw necessary supplies.   This is a " matter of public knowledge " of which, as well as of the public history of military operations in the State, the Courts will take judicial notice.   In re-opening the road, General Wilson was not the agent of the State, nor was it his object to serve the State.   He was an officer of the United States, in command of a portion of its army, and he acted under its authority alone, and for the promotion of its objects.

4.  The order given to General Wilson by the Government to open the road, carried with it the authority to take and use such private property as might be necessary for that purpose.   The cross-ties taken from the defendant in error, were personal property, and were suitable and necessary. When they were seized by the agent of the Government, the title vested in the United States, and that Government and not the State became liable to pay just compensation to the owner.   I understand this to be the ruling of the Courts of the United States in reference to all property seized by the army for the Government during the war.   The case of Coolidge *vs.* Guthrie, tried in the United States Circuit Court for the Southern district of Ohio, was an action of trover for the recovery of a lot of cotton or its value.   The plaintiff was a citizen of Arkansas, and his cotton was seized in 1862 by General Curtis, commanding an army of the United States, who, at the time, held possession of the town of

Helena, in said State. The cotton was seized on farms in the neighborhood of Helena, and brought into that place, and there sold to the defendant, who took it to New York and there sold it. The case was tried by Mr. Justice Swayne, who gave judgment for the defendant on the following grounds :

*First,* that the Court had no jurisdiction of the case, the seizure being an act of war ; and this defence was admissible under the general issue. *Second,* the property having been seized and firmly held as booty, the *title* of the hostile owner became extinct, and his remedy, if any, is against the Government, and not against the party to whom it was sold. Am. L., Rev. Vol. 3, p. 582.

If it can be shown, that the State in her settlement with the United States government undertook to settle this claim, she is liable; if not, the plaintiff's claim is against the United States. And the appeal, if any, is made to the State for compensation, must be left to the Legislature and not to the Courts.

The fact that the old officers of the road, who had held positions under the late Superintendent, held on under Major Glenn, can make no difference, as they had no control over the road. They acted under the military order of General Wilson and not under the authority of the State.

Judgment reversed.